THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROLF NIEUWEJAAR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., et al., <br><br> Defendants. | CASE NO. C14-0302-JCC <br><br> ORDER |

This matter comes before the Court on Defendants' motion for summary judgment on all claims. (Dkt. No. 22.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART and DENIES IN PART the motion for the reasons explained herein.

I.  BACKGROUND

Plaintiffs, husband and wife, own a piece of property in Deer Harbor. (First Amended Complaint, Dkt. No. 5, at 1–2, 4.)[1] In October 2006, they signed a deed of trust in favor of

---

[1] "In cases removed from state court, the removing defendant(s) shall file contemporaneously with the notice of removal a copy of the operative complaint, which must be attached as a separate attachment in the electronic filing system and labeled as the 'complaint' or 'amended complaint.'" W.D. Wash. Local Civ. R. 101(b). Here, rather than attach a copy of the operative complaint to the notice of removal, Defendants filed a separate declaration with several exhibits. One exhibit—Exhibit A—contains the entire state court record, and so includes the original complaint as well as the first amended complaint. However, because there are no page

ORDER
PAGE - 1

1  Countrywide Home Loans, Inc.[2] (First Amended Complaint, Dkt. No. 5, at 4.) The deed of trust
2  named Countrywide Home Loans, Inc. ("Countrywide") as the lender, Defendant LS Title of
3  Washington ("LS Title") as the Trustee, and Defendant Mortgage Electronic Registration
4  Systems, Inc. ("MERS") as the beneficiary. (First Amended Complaint, Dkt. No. 5, at 4.) On
5  November 14, 2006, Defendant ReconTrust Company, N.A. ("ReconTrust") recorded a
6  "substitution of Trustee and Full Reconveyance," in which MERS, purporting to be the
7  beneficiary under the deed of trust, attempted to appoint ReconTrust as the successor trustee.
8  (First Amended Complaint, Dkt. No. 5, at 4–5.)

9  Throughout 2008 and 2009, Plaintiffs tried to obtain a loan modification from
10 Countrywide. (First Amended Complaint, Dkt. No. 5, at 5–6.) Indeed, after initially attempting to
11 sell their home in 2008, they stopped after Countrywide allegedly told them that they would be
12 ineligible for a loan modification as long as the property was listed for sale. (First Amended
13 Complaint, Dkt. No. 5, at 5.) On January 27, 2009, ReconTrust issued a notice of default to
14 Plaintiffs, which Plaintiffs allege was filled with errors. (First Amended Complaint, Dkt. No. 5,
15 at 6.) Plaintiffs also allege that the Note was securitized after it was "sold along with other
16 residential mortgages into a mortgage pool." (First Amended Complaint, Dkt. No. 5, at 6.)

17 On February 4, 2009, MERS recorded an "Appointment of Successor Trustee," naming
18 ReconTrust as the successor trustee, with MERS listed as the beneficiary. (*See* First Amended
19 Complaint, Dkt. No. 5, at 6, Dkt. No. 24, Ex. B.) After some correspondence with an attorney for
20 Defendants Countrywide & Bank of America regarding alleged inaccuracies or errors in certain

21 _____

22
23 numbers on the state court record, the Court is unable to effectively cite to the First Amended
   Complaint. Accordingly, when citing to the First Amended Complaint, the Court will explicitly
24 reference that document, and cite not to the page numbers of the relevant docket but instead to
   the page numbers of the First Amended Complaint itself. The Court notes that Defendants'
25 failure to comply with Local Rule 101(b) has significantly hindered the Court's ability to address
   the points raised by the parties.
26   [2] Defendant Bank of America, N.A. ("Bank of America") is the successor to
   Countrywide. (Dkt. No. 23 at 4, ¶ 23.)

documents, (First Amended Complaint, Dkt. No. 5, at 6–7), Plaintiffs filed for bankruptcy and again requested a loan modification from Countrywide/Bank of America. (First Amended Complaint, Dkt. No. 5, at 7.) Plaintiffs were denied bankruptcy, as well as a loan modification. (First Amended Complaint, Dkt. No. 5, at 8.) On December 15, 2010, ReconTrust recorded a "Corporation Assignment of Deed of Trust," wherein MERS attempted to assign "all beneficial interest under [the] deed of trust" to Defendant U.S. Bank, N.A. ("U.S. Bank"). (Dkt. No. 24, Ex. D.)

In 2011, Plaintiffs received a notice of trustee's sale dated July 20, 2011, from ReconTrust,[3] supposedly acting as the trustee under the deed of trust. (Dkt. No. 24, Ex. E.) On July 12, 2013, Plaintiffs received a letter in the mail from Nationstar,[4] stating that the servicing of Plaintiff's loan was being transferred from Defendant Bank of America to Nationstar. (First Amended Complaint, Dkt. No. 5, at 9.) On November 13, 2013, an assignment of the deed of trust was recorded, wherein Bank of America assigned all interest in the deed of trust to Nationstar, (First Amended Complaint, Dkt. No. 5, at 9), and which describes the "original lender" as MERS.

Plaintiffs originally filed suit in July 2011, but later amended their complaint. Their claims include: defective trustee's sale and foreclosure proceedings; quiet title; slander of title; breach of the duty of good faith and fair dealing/breach of contract; breach of the Washington Consumer Protection Act; and unjust enrichment. (First Amended Complaint, Dkt. No. 5, at 9–14.) Plaintiffs ask for declaratory relief; "to vacate and set aside the foreclosure sale"; for compensatory damages; for treble damages under the Washington Consumer Protection Act; for a judgment that Plaintiffs are entitled to void the security interest in the property and that requires Defendants to terminate the lien on the property and refund all payments paid by

---

[3] Plaintiffs also allege that ReconTrust does not maintain a physical presence in Washington, as is statutorily required. (First Amended Complaint, Dkt. No. 5, at 8.)
[4] Nationstar is no longer a Defendant in this action. (*See* Dkt. No. 28.)

ORDER
PAGE - 3

Plaintiffs; for attorney's fees and costs; and for prejudgment interest. (First Amended Complaint, Dkt. No. 5, at 13–14.)

After Defendants removed the case to this Court in March 2014, (Dkt. No. 1), they moved for summary judgment on all claims. (Dkt. No. 22.) Plaintiffs responded, (Dkt. No. 29), and Defendants replied. (Dkt. No. 34.)

## II.  DISCUSSION

Under Federal Rule of Civil Procedure 56, the Court must enter summary judgment if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of material fact exists, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Accordingly, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). ). "[A] non-movant's failure to respond" to arguments made in a motion for summary judgment does not constitute "a complete abandonment of its opposition to summary judgment." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). However, "the opposing party's failure to respond to a fact asserted in the motion permits a court to 'consider the fact undisputed for the purposes of the motion.'" *Id.* (quoting Fed. R. Civ. P. 56(e)(2)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to particular materials in the record, including depositions, documents, admissions, and other such evidence, or showing that the materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

**A.  Claims of Defective Trustee's Sale and Foreclosure Proceedings Under the Washing Deed of Trust Act**

Under the Washington Deed of Trust Act ("DTA"), borrowers have the right "to restrain,

on any proper legal or equitable ground, a trustee's sale," but in such a case "[t]he court shall require as a condition of granting the restraining order or injunction that the applicant pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed." RCW § 61.24.130(1). A trustee's sale may not be continued more than 120 days after the date for which the sale was originally set. RCW § 61.24.040(6). Here, the notice of trustee's Sale set the original date of the trustee's sale as October 21, 2011. (Dkt. No. 24, Ex. E.) The sale did not occur on that, or any other date, and it has been far more than 120 days since the originally-scheduled trustee's sale. (*See* Dkt. No. 23 at 4, ¶ 24.) Plaintiffs submit no evidence suggesting that there was a sale, or is a pending sale. Nor do Plaintiffs show that they have deposited with the clerk of the Court "the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed." RCW § 61.24.130(1). To the extent Plaintiffs are requesting that a pending trustee's sale be enjoined, that request is denied because there is no pending sale. To the extent Plaintiffs, as they state in their complaint, seek to set aside or vacate a foreclosure sale, such a remedy is not ripe, because no such foreclosure sale has occurred.

However, Plaintiffs also state that they are requesting "[f]or a declaration of the rights and duties of the parties, specifically [that] Defendants Recontrust, Bank of America, BAC Home Loans Servicing, and MERS initiated a defective foreclosure of the Property." (Plaintiff's First Amended Complaint, Dkt. No. 5, Ex. A). Defendants do not contend that a declaratory judgment would be inappropriate, assuming there is a genuine issue of material fact as to the merits of Plaintiffs' underlying DTA claim.

"In Washington, '[a] mortgage creates nothing more than a lien in support of the debt which it is given to secure.'" *Bain v. Metro. Mortg. Group, Inc.*, 285 P.3d 34, 38 (Wash. 2012) (quoting *Pratt v. Pratt*, 209 P. 535, 535 (Wash. 1922)). Mortgages secured by a deed of trust on the mortgaged property "do not convey the property when executed; instead, '[t]he statutory deed of trust is a form of a mortgage.'" *Id.* (quoting 18 William B. Stoebuck & John W. Weaver,

ORDER
PAGE - 5

Washington Practice: Real Estate: Transactions § 17.1, at 253 (2d ed. 2004)). In effect, "'it is a three-party transaction in which land is conveyed by a borrower, the 'grantor,' to a 'trustee,' who holds the title in trust for a lender, the 'beneficiary,' as security for credit or a loan the lender has given the borrower.'" *Id.* (quoting Stoebuck & Weaver, § 17.3, at 260). However, "only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." *Id.* at 36. Even so, it may be that the holder of the note can appoint an agent with the power to take action on its behalf, even if the agent is not, in its own right, the true beneficiary. *See id.* at 45 ("[N]othing in this opinion should be construed to suggest an agent cannot represent the holder of a note."). A "trustee" may be either "designated as the trustee in the deed of trust or appointed under RCW 61.24.010(2)." RCW § 61.24.005(16). Generally, if a trustee is not designated as the trustee in the deed of trust, or if the beneficiary wants to replace the trustee, "the beneficiary shall appoint a trustee or successor trustee." RCW § 61.24.010(2).

Here, at issue is the identity of the beneficiary and, in particular, whether a validly appointed trustee, or other entity with proper authority, issued the notice of default. It is clear that, because it is not and has never been the holder of the note, Defendant MERS was and is not the true beneficiary of the deed of trust, even though it is named as such in that document. *See Bain*, 285 P.3d at 36–37 ("[I]f MERS does not hold the note, it is not a lawful beneficiary."). Instead, the original beneficiary was the original lender, Countrywide. (*See* Dkt. No. 23, Ex. B.) Because Bank of America is the successor to Countrywide, and there is uncontested evidence that it holds the original, wet ink note, Bank of America, N.A. is the current beneficiary. (Dkt. No. 23 at 4, ¶ 23.)

The only basis for finding that ReconTrust is a proper trustee is the "Assignment of Successor Trustee" executed by MERS. (*See* Dkt. No. 24, Ex. B.) However, because MERS is not and never was the proper beneficiary, and—as Plaintiffs note—MERS has never owned any interest whatsoever in the deed of trust, ReconTrust was not directly appointed by the true

beneficiary. Defendants also state that MERS was directed by Countrywide, the then-beneficiary, to appoint Recontrust as the successor trustee. (*See* Dkt. No. 23 at 3–4, ¶ 15.) The only evidence put forward to support this argument is the statement of Ms. Jane Cashel, an Assistant Vice President at Bank of America, (Dkt. No. 23 at 3–4, ¶ 15), that "Countrywide Home Loans, LP, as the holder of the Note on behalf of U.S. Bank, directed MERS to appoint ReconTrust as the successor trustee." (Dkt. No. 23 at 3–4, para 15.) This bare statement is not sufficient evidence either of Countrywide directing MERS to appoint ReconTrust to the relevant position, or of any viable agency relationship between Countrywide and MERS. Ms. Cashel does not assert that she was personally involved in Countrywide directing MERS to take the relevant action, or even that she was ever employed by Countrywide. Nor does she submit any correspondence between Countrywide and MERS regarding the alleged directive. Nor does she submit any contract or other agreement between Countrywide and MERS showing the existence of an agency relationship. Accordingly, there is a genuine issue of material fact as to whether there was a viable relationship between Countrywide and MERS that allowed MERS to appoint a successor trustee, as well as whether Countrywide directed MERS to appoint ReconTrust as the trustee.

      Defendants also argue that ReconTrust is authorized to issue a notice of default because it is the authorized agent of Bank of America, the true beneficiary and successor to Countrywide. In support of this contention, Ms. Cashel states that "Countrywide Home Loans Servicing, LP, as the holder of the Note on behalf of U.S. Bank, authorized ReconTrust to issue the January 27, 2009 Notice of Default." (Dkt. No. 23 at 3, para 14.) Again, even assuming an authorized agent of the beneficiary may issue a notice of default, [5] Ms. Cashel does not set forth the basis for this

---

[5] Defendants argue that a notice of default may be issued by a "trustee, beneficiary, or other authorized agent." (Dkt. No. 22 at 9 n.6.) Defendants state that they are quoting RCW § 61.24.031(8) in making that assertion. However, RCW § 61.24.031(8) does not contain the relevant language quoted, and in fact contains only the definitions of the terms "Department" and "Seller financed sale." RCW § 61.24.031(8). Defendants may have intended to cite to RCW § 61.24.030(8), but that subsection states merely that "the notice of default shall be transmitted by the beneficiary or trustee to the borrower." RCW § 61.24.030(8). It says nothing regarding an

statement, or put forward any documents that support it. Accordingly, there is a genuine issue of material fact as to whether there was a viable relationship between Countrywide/Bank of America and ReconTrust that allowed ReconTrust to issue a notice of default, as well as whether ReconTrust was actually directed to issue the notice.

Because this is sufficient to find a genuine issue of material fact, the Court will not reach the other allegations raised by Plaintiffs, related to the propriety of loan securitization and whether ReconTrust had a proper physical address in Washington State. The Court declines to grant summary judgment on the DTA claim insofar as it requests declaratory relief.

### B. Quiet Title Claims

To maintain a quiet title claim, the plaintiff must first pay off all outstanding debt. *See Evans v. BAC Home Loans Servicing, LP*, Case No. C10-0656-RSM, Dkt. No. 18 at 5, 2010 WL 5138394 at *3 (W.D. Wash. Dec. 10, 2010) ("Plaintiffs cannot assert an action to quiet title against a purported lender without demonstrating they have satisfied their obligations under the Deed of Trust."). Here, Defendants note that Plaintiffs have not paid any of their debt since 2008. (*See* Dkt. No. 23 at 3, ¶ 13, Dkt. No. 23, Ex. E & F.) Plaintiffs submit no evidence to contradict those claims, and no arguments to oppose those put forward by Defendants. Thus, Plaintiffs cannot maintain a quiet title suit against Defendants. Accordingly, the Court finds that there is no genuine issue of material fact as to the quiet title claim, and GRANTS summary judgment as to it.

### C. Slander of Title Claims

A slander of title claim has five elements: 1) that the underlying statement be false; 2)

---

authorized agent. *Bain* did not explicitly rule that an authorized agent could issue a notice of default on behalf of a beneficiary, though neither did it explicitly foreclose such a result. *See Bain*, 285 P.3d at 45 ("[N]othing in this opinion should be construed to suggest an agent cannot represent the holder of a note [also known as the beneficiary]."). However, the Court need not reach the issue of whether an authorized agent may or may not issue a notice of default at this time.

ORDER
PAGE - 8

that it be maliciously published; 3) that it be spoken with reference to some pending sale or purchase of property; 4) that it go to defeat plaintiff's title; and 5) that it result in plaintiff's pecuniary loss. *Rorvig v. Douglas*, 873 P.2d 492, 496 (Wash. 1994) (en banc). "Slander of title is only available where the defendant has interfered with the plaintiff's sale of the property." *Lapinski v. Bank of America, N.A.*, Case No. C13-0925-RSM, Dkt. No. 17 at 8, 2014 WL 347274 at *5 (W.D. Wash. Jan. 30, 2014). *See also Pay'n Save Corp. v. Eads*, 767 P.2d 592, 595 (Ct. App. Wash. 1989) (affirming dismissal of slander of title claim where party conceded he could not prove that the statement was "spoken with reference to some pending sale or purchase of the property"); *Clarkson Comty. Corp. v. Asotin Cnty. Port Dist.*, 472 P.2d 558, 560 (Ct. App. Wash. 1970) (stating that an expectation or anticipation of a purchase is insufficient to show that the statements were made in reference to a pending sale). *Cf. Rorvig*, 873 P.2d at 496 (pending sale requirement met where an individual made an offer to purchase the property which he withdrew upon learning of the encumbrance).

　　Here, it is uncontested that Plaintiffs have not listed the property for sale since 2008, (*see* Dkt. No. 30 at 2, ¶ 8), while the notice of trustee's sale was issued in 2011. (Dkt. No. 24, Ex. E.) Plaintiffs argue that allegedly qualifying statements were "made in reference to a pending trustee's sale, the effect of which clouded the Nieuwejaars' title to their home and precluded the Nieuwejaars from selling or transferring their home." (Dkt. No. 29 at 18.) As Defendants note, "the allegedly slanderous statements were not made in reference to any pending sale by *Borrowers*." (Dkt. No. 34 at 12.) Even assuming Plaintiffs had proved all other elements of their claim, there is no genuine issue of material fact as to the third and fifth elements, because Plaintiffs have put forward no evidence that they made any attempt to sell the property at or around the time the alleged wrongful actions by Defendants occurred, and therefore that Defendants' actions harmed Plaintiffs. Accordingly, the Court GRANTS summary judgment as to that claim.

//

**D. Breach of Duty of Good Faith and Fair Dealing/Breach of Contract**

"Under Washington law, '[t]here is in every contract an implied duty of good faith and fair dealing' that 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" *Rekhter v. Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (en banc) (quoting *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991)). Even so, "the implied covenant of good faith and fair dealing cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties. Instead, 'the duty [of good faith and fair dealing] arises only in connection with terms agreed to by the parties.'" *Rekhter*, 323 P.3d at 1041 (quoting *Badgett*, 807 P.2d at 360). Nonetheless, "the general duty to contract in good faith may make it possible to rightfully rely on statements made by another with whom he contracts or on the validity of a transaction based on a failure to disclose relevant information concerning the agreement entered into between them." *Liebergesell v. Evans*, 613 P.2d 1170, 1175 (Wash. 1980).

Here, Plaintiffs do not point to any specific contract term in connection to this claim.[6] Instead, Plaintiffs state that the defendants "engaged in bad faith by attempting to foreclose when they had no lawful right to do so." (Dkt. No. 29 at 24.) However, even assuming that statement's truth, such a claim arises from a statutory violation of the DTA, which the Plaintiffs have already asserted, not a violation of the contract. Plaintiffs also state that the facts in this case also demonstrate "bad faith in the loan modification process, where the Nieuwejaars were in the throes of attempting to obtain a loan modification from these defendants and the continual delay and subterfuge caused them to fall further behind on their payments." (Dkt. No. 29 at 24.) Again, Plaintiffs do not point to any provision of the contract to which that allegation relates, or any statements made at the time the parties contracted that might implicate the duty of good faith and

---

[6] This is not a breach of the duty of good faith claim under RCW § 61.24.010, and it specifically references the contract in the complaint. (First Amended Complaint, Dkt. No. 5, at 11.)

ORDER
PAGE - 10

fair dealing. Nor do Plaintiffs allege, as is generally alleged in such claims, that the contract gave Defendants "'discretionary authority to determine a contract term,'" and that they abused that authority. *Rekhter*, 323 P.3d at 1041 (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 632 (Ct. App. Wash. 1997)).

There is no genuine issue of material fact as to whether Defendants breached their duty of good faith and fair dealing in relation to the contract, and the Court GRANTS summary judgment to Defendant as to that claim.

### E. Breach of the Consumer Protection Act

The Washington Consumer Protection Act ("CPA") has five elements: (1) the defendant engaged in an unfair act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) a showing of injury to the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). Here, Defendant makes a number of arguments related to Plaintiff's CPA claim: first, that to the extent the claim relies on the origination of the loan, the statute of limitations has expired, (Dkt. No. 22 at 17); second, that the claim is moot because no sale took place, and there is no sale pending, (Dkt. No. 22 at 17); third, "there is nothing improper about loan securitization," (Dkt. No. 22 at 17); fourth, "the evidence shows that Defendants were authorized to foreclose and properly recorded [sic] documents," (Dkt. No. 22 at 17); fifth, that Plaintiffs have not presented any evidence of improper fees and charges, (Dkt. No. 22 at 17), and so Plaintiffs cannot prove damages; and sixth, there is no evidence that Defendants recorded any "false" or "deceptive" documents. (Dkt. No 22 at 17–18.)

As a preliminary matter, under the Local Rules, replies related to motions for summary judgment "shall not exceed twelve pages." W.D. Wash. Local Civ. R. 7(e)(3). Here, Defendants' reply is fifteen pages. (*See* Dkt. No. 34.) Accordingly, the Court hereby STRIKES pages thirteen through fifteen of Defendants' reply, which includes Defendants' arguments related to Plaintiffs'

CPA claim. *See* W.D. Wash. Local Civ. R. 7(e)(6).

### 1. Statute of Limitations

The CPA has a four-year statute of limitations. RCW § 19.86.120. Defendant is correct that, if Plaintiffs were filing a CPA claim related to the origination of the loan, the statute of limitations would have passed. However, Plaintiffs' CPA claim does not arise from the origination of the loan. Instead, the allegedly deceptive or wrongful acts include: 1) initiating improper or premature foreclosure proceedings to generate unwarranted fees; 2) assessing improper or excessive late fees; 3) collecting payments from a borrower when Defendants had already received full consideration for their interest in securitized promissory notes; 4) failing to disclose the fees, costs, and charges allowable under the loan; 5) executing and recording false and misleading documents; and 6) acting as beneficiaries and trustees without legal authority to do so. (First Amended Complaint, Dkt. No. 5 at 13.) Accordingly, the statute of limitations is not implicated in Plaintiffs' CPA claim.

### 2. Mootness

Assuming Plaintiffs are able to satisfy the five *Hangman* elements, Plaintiffs' CPA claim is not moot because the sale did not go forward. Indeed, Defendants put forward no legal authority for their mootness argument. To the extent Defendants, in raising this argument, are attempting to argue that Plaintiffs have not put forward sufficient evidence to demonstrate that there is a genuine issue of material fact as to whether Defendants' actions caused Plaintiffs' damages, the Court will address that issue below.

### 3. Loan Securitization

Because, as described below, the Court finds that there is a proper basis for the CPA claims that does not rest on loan securitization, the Court does not reach the issue of whether loan securitization is a violation of the CPA.

### 4. Proper Foreclosure

Defendants argue that foreclosure was properly initiated, for the reasons they previously

set out regarding a violation of the DTA. However, because the Court finds that there is a genuine issue of material fact as to whether there was an agency agreement that either authorized MERS to appoint ReconTrust as the trustee, or that authorized ReconTrust as agent for the beneficiary to issue a notice of trustee's sale, the Court declines to grant summary judgment on Plaintiff's CPA claim on the grounds that the foreclosure was properly initiated.

### 5. Injury or Damages under the CPA

In relation to the CPA, "[i]njury is distinct from damages . . . [and] [m]onetary damages need not be proved; unquantifiable damages may suffice." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 899–900 (Wash. 2009). Here, Plaintiffs assert the presence of improper fees or charges, damage to Plaintiffs' credit ratings, and the potential loss of their home to foreclosure. Defendants argue that Plaintiffs have not submitted sufficient evidence of injury or damages traceable to Defendants' allegedly wrongful conduct. In particular, Defendants argue that "while Borrowers claim payment of unwarranted and improper fees and charges, they fail to present any facts or evidence to establish what those fees and charges were." (Dkt. No. 22 at 17.) Meanwhile, Defendants contend that they have "presented evidence that Borrowers have not paid any money on their loan since May 2008." (*Id.*) Plaintiffs argue that their credit rating has also been damaged, and submit recent copies of their credit reports in support of their motion.

On a motion for summary judgment, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here, it was Defendants' burden, not Plaintiffs', to put forward at least some evidence showing that the fees and charges were not improper in their motion for summary judgment. While Defendants note that Plaintiffs have not paid any money on their loan since May 2008, (Dkt. No. 22 at 17), they do not actually state that the only reason the fees and charges were imposed was due to that failure to pay. Nor do they

submit any documentation regarding the imposition of fees and charges, such as correspondence to Plaintiffs regarding their failure to pay, or internal documents imposing such fees. Nor do they point to the provisions of the contract that allow for the imposition of late fees, and how the contract specifies that the fees be calculated. Finally, to the extent Plaintiffs are asserting that the deceptive act or practice was inducing Plaintiffs not to sell their home, so as to force Plaintiffs to retain property subject to a mortgage that they had no realistic chance of repaying and subjecting Plaintiffs to fees and charges, Defendants do not address Plaintiffs' claims in their motion for summary judgment, or assert why the imposition of any fees or charges is not directly traceable to Defendants' allegedly improper conduct.

Second, Plaintiffs argue that their credit ratings have been harmed by Defendants' actions. (Dkt. No. 29 at 22.) Because the Court has stricken the portions of Defendants' reply that address this claim, Plaintiffs' contentions are effectively uncontested. Moreover, after consideration of all evidence submitted, and granting all reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs have submitted sufficient evidence to create a genuine issue of material fact as to whether their credit scores were adversely affected by Defendants' actions.

Accordingly, the Court finds that there is a genuine issue of material fact regarding the presence or absence of an injury caused by the allegedly wrongful acts of Defendants.

### 6. Recording of False or Deceptive Documents

Defendants argue that they did not record any "false" or "deceptive" documents.

The Washington Supreme Court has held that "characterizing MERS as the beneficiary has the capacity to deceive," and such a characterization presumptively satisfies the unfair act or practice element of a CPA claim. *Bain*, 285 P.3d at 51. Here, certain documents, such as the Appointment of Successor Trustee, characterize MERS as the beneficiary of the Deed of Trust. (*See* Dkt. No. 24, Ex. B.) Thus, the act of recording that document presumptively satisfies the first CPA element. Because Defendants do not put forward any evidence to overturn the

ORDER
PAGE - 14

presumption that the act of recording that document was deceptive, there is a genuine issue of material fact as to whether Defendants engaged in an unfair act or practice.

### F. Unjust Enrichment

A claim of unjust enrichment requires: 1) one party conferred a benefit upon another; 2) the party receiving the benefit must have knowledge of the benefit; and 3) the party receiving the benefit must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Dragt v. Draft/DeTray, LLC*, 161 P.3d 473, 482 (Ct. App. Wash. 2007). Plaintiffs' only allegations regarding unjust enrichment are that Bank of America and U.S. Bank have received an improper benefit by collecting payments after the loan was securitized. (First Amended Complaint, Dkt. No. 5, at 13–14.)

Here, Defendants argue that Plaintiffs were legally obligated to make payments on their mortgages, and so any benefit conferred on the recipient of those payments, barring evidence that Plaintiffs are at risk of making duplicate payments, is not inequitable. Plaintiffs do not respond to this argument or submit any evidence to contest that which was submitted by Defendants. Because there is uncontested evidence that Plaintiffs were obligated to make the relevant payments, and no evidence that Plaintiffs are at risk of making duplicative payments, the Court finds that there is no genuine issue of material fact as to whether Defendants were unjustly enriched, and GRANTS summary judgment as to this claim.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, (Dkt. No. 22) is GRANTED IN PART and DENIED IN PART. The Court DENIES summary judgment as to Plaintiffs' improper foreclosure and CPA claims, and GRANTS summary judgment on all other claims.

The parties are DIRECTED to file a copy of the First Amended Complaint directly on the docket.

//

1   DATED this 10th day of July 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 16